IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL D. MORTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | Criminal Action No. 14-00260-KD-MU |
| v. ) | |
| ) | Civil Action No. 17-00032-KD-MU |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

This action is before the Court on Defendant Michael Dewayne Morton's "First Step Act Compassionate Release Motion for Appeal under the Coding Habeas Corpus of Constitionaltiy Reflecting the Bill of Attainder" (doc. 60) which the Court construes as a motion for reconsideration of the denial of Morton's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)[1] (doc. 52).[2]  Upon consideration, and for the reasons set forth herein, the motion for reconsideration is DENIED.

---

[1] Daniele v. United States, 740 Fed. Appx. 973, 977 (11th Cir. 2018) ("… we have held that pro se 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'") (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

[2] Morton's motion for appointment of counsel (doc. 60, p. 1) is denied.  Morton does not have a constitutional or statutory right to counsel for "motions filed under § 3582; therefore, 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Reese, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)). The Court finds that appointment of counsel is not necessary. Morton has shown the ability to effectively set forth the facts and argument that form the grounds for his motion for reconsideration and his arguments are not factually and legally complex or exceptional such that appointment of counsel would be warranted. United States v. Mars, 2022 WL 1124804, at *2 (11th Cir. Apr. 15, 2022) ("the district court did not abuse its discretion in declining to appoint counsel for Mars because he did not have a constitutional right to counsel and because his compassionate release motion was not a complex issue.") (citing United States v. Webb, 565 F.3d 789, 794-95 (11th Cir. 2009)).

I. Relevant Background

Morton pled guilty to Count One of an Indictment charging the offense of felon in possession of a firearm (doc. 29). Because Morton had at least three prior convictions for a violent felony, he was classified as an armed career criminal for purposes of the Sentencing Guidelines (doc. 26, p. 5). Morton's total offense level was 30 and his criminal history category was VI. His advisory sentencing guidelines range was 168 months to 210 months. However, his statutory minimum sentence was greater than the low end of the guidelines range; therefore, his range was 180 months to 210 months. In April 2015, Morton was sentenced to the statutory minimum of 180 months.

Morton moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on basis that he was experiencing the after-effects of Covid 19 (docs. 49, 50). Specifically, Morton reported difficulty breathing, congestion in his throat and chest, daily vomiting and diarrhea, headaches, and weakness. The Court denied his motion (doc. 52). The Court found that even if Morton could show an extraordinary and compelling reason for a reduction of sentence, consideration of the relevant factors in 18 U.S.C. § 3553(a) weighed against a reduction. The Court also determined that Morton's history of violent crimes indicated he was a danger to the safety of other persons and to the community. See U.S.S.G. § 1B1.13, Policy Statement; 18 U.S.C. § 3142(g).

Morton is now 34 years old. His release date is September 27, 2027. He has served seven years of his sentence and is incarcerated at USP Thomson in Thomson, Illinois. At present, no inmates are positive for Covid-19 and no inmates have died. One staff member is positive and one staff member has died. Seven hundred and twenty-fine inmates and seventeen

inmates and one hundred and five staff members have recovered. https://www.bop.gov/coronavirus/ (last visited June 5, 2022).

II. Analysis

The Court of Appeals for the Eleventh Circuit has held that a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) is a continuation of the criminal proceedings. United States v. Craig, 786 Fed. Appx. 237, 238 (11th Cir. 2019) (citing United States v. Fair, 326 F. 3d 1317, 1318 (11th Cir. 2003)). The Eleventh Circuit has also held that "[a]lthough the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases." Serrano v. United States, 411 Fed. Appx. 253, 255 (11th Cir. 2011); see also United States v. Bueno-Sierra, 2020 WL 4015499, at *2 (S.D. Fla. 2020) (citing United States v. Russo, 2011 WL 3044844, at *1 (S.D. Fla. July 25, 2011) for the premise that "[c]ourts have tended to import the standards governing a civil motion for reconsideration into the criminal arena.").

"In adjudicating motions for reconsideration in criminal cases, district courts have relied on the standards applicable to motions for reconsideration filed in civil cases pursuant to Rule 59, Federal Rules of Civil Procedure. The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact." United States v. Bueno-Sierra, 2020 WL 4015499, at *2 (quoting United States v. Brown, 2019 WL 7067091, at *1 (M.D. Fla. Dec. 23, 2019) (internal quotation marks and citations omitted)); United States v. Galvez, No. 20-13557, 849 Fed. Appx. 890, 893 (11th Cir. Apr. 22, 2021) (finding that none of Galvez' "arguments present the type of newly discovered evidence or manifest error of law or fact that warrants reconsideration.") (citing Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) and Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010).

Morton argues that his first motion "was wrongfully dismissed prematurely; without the privilege of a conductive of effective investigation begin rendered" and that an investigation

"would have revealed hidden corruptible Government behavior" (doc. 60, p. 2). Morton alleges that he initially contracted Covid 19 because the prison staff was negligent, and as a result, he now "suffers from long haul Covid 19" (Id., p. 3).[3] Morton argues that he has been "repeatedly informing medical staff" about his post-Covid 19 medical conditions, but they have ignored this illness, which was "caused by their own negligence." (Id.)[4] Morton appears to argue that this Court has made a manifest error because it did investigate his motion for compassionate release and uncover this negligent conduct.

---

[3] To the extent that Morton attempts to raise claims under the Eighth and Fourteenth Amendments alleging cruel and unusual punishment based on the Bureau of Prisons alleged negligence in managing the Covid 19 pandemic, or based on the alleged deliberate indifference to a serious medical need at USP Thomson, **those claims should be brought in the district where the prison staff reside or where the alleged conduct occurred**. See Cosby v. United States, 2009 WL 2821943 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is improper.") (citations omitted); Saleh v. Florida, 2018 WL 2976049, at *8 (M.D. Fla. May 23, 2018), report and recommendation adopted, 2018 WL 2971045 (M.D. Fla. June 13, 2018) (... to the extent Saleh attempts to bring § 1983 and Bivens claims against defendants who are domiciled in Nevada and acted only in Nevada, dismissal of the claims is warranted because the claims are frivolous given the evident absence of personal jurisdiction over them.") (discussing the need for a nonresident defendant to have certain minimum contacts with the forum state); Venkataram v. Bureau of Prisons, 2018 WL 1273078 (S.D. Fla. 2018) (noting that the district court had dismissed Venkataram's claims regarding dietary accommodations during his incarceration at FCI Fort Dix in New Jersey for lack of personal jurisdiction); see also Hopkins v. Osborn, 2019 WL 1099030 (D. Conn. 2019) (dismissing claims against a federal judge and DEA agents in Arizona for lack of personal jurisdiction).

[4] Morton also asserts that because he has filed numerous lawsuits against the staff at USP Thomson, they have retaliated against him. Morton, who identifies himself as a Black Nationalist, argues that "this institution" - apparently meaning USP Thomson - has "intentionally" placed him in danger by assignment to a cell unit with White Supremacists, and ordering them to hurt Morton (doc. 60, p. 3). To the extent that Morton attempts to raise a claim under the Eighth and Fourteenth Amendments alleging cruel and unusual punishment because of deliberate indifference to a known risk of serious harm, again, **those claims should be brought in the district where the prison staff reside or where the alleged conduct occurred.**

Morton has failed to show a manifest error of law or fact such that would merit reconsideration of his motion for compassionate release. Morton's allegation that he should be released because the prison staff ignore his medical complaints does not establish an extraordinary and compelling reason that would be consistent with the applicable Policy Statement for a reduction in sentence issued by the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Moreover, Morton has not presented any grounds for reconsideration of the decision that Morton is a danger to the safety of other persons and the community.[5] See U.S.S.G. § 1B1.1.

III. Conclusion

For the reasons set forth, Morton's motion for reconsideration is denied.

DONE and ORDERED this the 8th day of June 2022.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[5] Specifically, Morton qualified as an armed career criminal pursuant to the Sentencing Guidelines. He committed the instant offense, after he had been convicted for Assault 2nd Degree (four convictions involving use of a firearm), discharging a firearm into an occupied building and injuring an occupant, and domestic violence.